Good morning. This case arises out of a Fourth Amendment challenge to the reasonableness of a search by a Colorado probation or parole officer of GPS data that was in the possession of Colorado. The touchstone of the Fourth Amendment is reasonableness, and it balances an individual's reasonable expectation of privacy against law enforcement's reasonable legitimate government interest. Warrantless searches are per se unreasonable unless they fall under an exception. And a search occurs, and this gets confusing sometimes when we read these cases. What is a search? A search occurs in the case law and under the Constitution when there is a government invasion into a sphere in which an individual has an expectation of privacy. And here we're not focused on the placement of the GPS unit on your client. We're just focused on the sharing of the data that was collected by that GPS unit with law enforcement. That's correct. I mean, they're really kind of two places. It depends on where you focus. But we are not arguing at all and don't believe the law supports an argument that affixing a GPS unit on a parolee, and that label in and of itself is in flux in this particular case as well. But I'm going to continue to use the word parolee, somebody under intensive supervision. The placement of it does not, we're not arguing that that's an unlawful search of any sort. What we are arguing is that on these specific facts, there are two places that might be considered a search under the law. The first one would be when CPO Anderson accessed the data that was in the CDOC database without, for investigative purposes. That would be a possibility. The other is then when he shared it to the federal government through the ATF because he was working at the same time with ATF. And I'll be very frank with you. I have tried to figure out for years how these joint task forces work and I believe they work a little bit differently in each state and different agencies. But it does not appear to me on these facts or general practice that working with the federal government has any obligations to comply with the state law in your state law functions. Well, as part of having the GPS placed on his ankle, your client understood that data was being collected and being given to the CPO agent, right? I'm not sure that that's true. I'll be real honest. And if we look at the agreement which was attached to the back of the reply brief, it uses the word monitor. And this was discussed in the district court opinion as well. And I think the question is whether somebody who is reading that document, and again there's a dispute about whether we assert that it's an agreement. The government does not. But when reading that document, it uses the word monitoring. And the question then becomes, what does the word monitoring mean? Does that mean real-time monitoring? Does that mean real-time monitoring and data collection? Does it mean real-time monitoring and data collection and data storage? Does it mean real-time? Well, logically, I mean really. Are you going to have somebody, logically, are you going to have someone looking at a screen 24-7 to see where this fellow is? I mean really? Monitoring? We do it when we minimize, when we do wiretaps. I don't think it's outside the realm of possibility. That's not what happened here. And I'm not submitting that that is what should have happened. What I'm talking about is when we're talking about words that people are relying on in written documents to determine what their expectations are. We're attaching a GPS to you and you will be monitored. And you don't think that he understood that they will look to see where he is? What I can tell you is that he challenged that, Your Honor. What he understood, I don't know, and I think the question... Well, he did understand he was not free to run at large. I agree with that. I'm not suggesting that he had a normal expectation of privacy. He's a parolee. There is a diminished expectation in the conditions of his release. I'm not suggesting that at all. I mean, I hate to go here. Maybe I shouldn't. But he can't be a parolee because he wouldn't qualify for this program. I mean, you call him a quasi-parolee, a quasi-parolee. I mean, you have to have more than 180 days remaining until you're eligible for parole to even participate in this program. Correct? And you're correct. And like I said, Your Honor... Well, not perhaps. I'm reading the Colorado statute. I misspoke. What I should have said is that he, in our opinion, is not an inmate. There are different labels. And when you look at that form, that same form is used for a lot of different positions. And I'm not suggesting it's a good form. I'm not trying to defend it. But what I am suggesting is that he is not an incarcerated person. He has a great deal of liberty compared to even somebody who is living in residential communities. Does he have less liberty than a parolee? He was living at home. He was not in a facility. It depends on what the conditions of release are. The term community inmate, he was a community inmate. He occupied a status. And that status was more restrictive than the status of a parolee. So by definition, it seems to me we shouldn't get caught up in what he thinks. The bottom line is what's a reasonable expectation of privacy. And he's occupying a status in which he has less freedom than a parolee. So why doesn't it necessarily follow that he has less of a reasonable expectation of privacy? I think if you start at the beginning and you say this is a parolee and a somebody in community corrections, that would probably be true. But there are things that can happen as the relationship goes on. So there could be restrictions on somebody even who is a parolee, depending on what these agreements say. Now if we're starting at ground zero, he is not a parolee. It's not really an agreement, is it? I believe it is an agreement. Look at the caption of the document. What's it called? It's called an order. It's called an order, but it uses the words agreement throughout it. And the case law uses that as well. But that underlies the distinction. For a community inmate, they are subject to an order. There's not an agreement. A parolee has an agreement. A community inmate has an order, right? Under Colorado law. Excuse me, I'm sorry. I think the question becomes, and this is counterintuitive, can the state of Colorado force someone to go into a lesser level of commitment and lesser restriction on their freedom? And if there is a choice, and I believe there is a choice, then I believe that he is agreeing to go into this, but he is conditioned based on what the state tells him those conditions are, but he also has a right to rely on that the state is not going to trample on the requirements of the probation office in order to enforce those conditions of release. Irrespective of what we call him, is it reasonable for him to have an expectation of privacy when he knows he has a GPS unit on his ankle that is giving information to the jailers? I believe it is reasonable for this reason. And that's the McCullough case. Because McCullough says that a probation officer cannot use that for investigative purposes only. And that's the Colorado law. McCullough had two parts. One was an interpretation of Colorado law, which was whether you can search without reasonable suspicion. And the court said you can. And the second part of it is what would be required under federal law. And they came up with a three-part test that was promptly rejected by the United States Supreme Court in United States v. Knight. And it specifically says that you don't have to limit these searches to those with a probationary purpose. And, Your Honor, I am troubled, frankly, with the way this case law has developed. Samson, Knight, and then when you get down into the circuit levels and even at the district courts. The cases keep reciting that it is a hard and fast rule. But I do not believe that to be good examples. You can't divorce the holding from the state law application of the state law. And I am not convinced and not persuaded that those cases still aren't driven by the peculiarities of the state law. For example, Samson. But the state law is that you can search without, with no reason. The state law is, under McCullough and your case, the state portion of the ruling was that you can search any time you want. You don't have to have a reasonable cause to search. There's a difference between And the second part of it was the state's attempt at predicting federal constitutional law. And it got it wrong. So we don't go back and give deference to the state's prediction of what the Supreme Court would do after the Supreme Court has told us they got it wrong. The Supreme Court hasn't ever ruled on the Colorado statute. And the Colorado court has said definitively, it can be suspicionless, but it can't be for investigative purposes. Well, do we look at what is being searched? Do we look at those places that are sacrosanct in the Fourth Amendment analysis, like home? McCullough dealt with the search of a home. We are not dealing with that here. That's true. And certainly those are sacrosanct. And isn't that a distinction? Yes. Sure. Greater expectations of privacy in your home. I think that's true even under the Fourth Amendment. We've acknowledged that since we drafted the Constitution. When we look at this case, probably the primary reason I'm standing here is because not only did the district judge not suppress the GPS, but the district judge did not give a suppression hearing to the defendant on the defendant's motion. What was the factual issue that was in dispute that an evidentiary hearing was needed on? And was that made clear to the district court at the motion for hearing stage? As to the suppression hearing? As to the request for the suppression hearing? Yes. I mean, you don't have to have a hearing if there's no conflict in the evidence. That's correct. I agree, Your Honor. The law does not require a suppression hearing. However, in this particular case, and to be quite honest, this is a little bit of a case within the case, because we don't know for sure what would have happened. And certainly the defendant does not have to proffer every challenge they're going to have to the collection of evidence at a suppression hearing. And until you get witnesses on the stand, you can only predict. You say, okay, he's saying to the court, Your Honor, I would want an evidentiary hearing on my motion to suppress. And the court would say to the defendant, what needs to be addressed at the hearing? And he says, we don't know yet. We need to have the hearing to find out. Is that going to get you anywhere? I don't think so. I don't disagree that the motion was not artfully put before the court. But I believe what would have, given an examination of the record to the extent that we have it, I think the issues would have been some of the things we're talking about here. First of all, is the state of Colorado and the CPO, are they bound by this document that's in dispute? Is that an agreement? This is your contract argument? Yes, part of that, yes. That was not raised to the district court, was it? I mean, I've looked. No, but I believe it rises to a constitutional level as it relates to unlawful searches and seizures. And we believe it was there. I think it might have been raised had there been a hearing. But we don't know. We have no idea. And then when we get into the issue of the transfer of the data from Colorado, the CPO Anderson, to the task force, which is the federal agency, that then ultimately the ATF was who got involved and indicted in this case, the transfer of that information and whether that was outside of the scope of what the Colorado law would allow. And if it was, then certainly that would have been discussed. Is there any parallel between what happened here and fingerprints and DNA? That is, it's collected, it's stored, and then anybody can just buzz into that computer and find those fingerprints, find that DNA. Or sharing, excuse me. Sharing, you mean, Your Honor? Right. I think it's who's sharing it. If it's a CPO, it appears to me that the law says that a CPO cannot share information for solely investigative purposes. And because the evidence in this case, when you look at the record, the only evidence that really placed Mr. Matthews at the place of this punch. Isn't that part of their supervisory duty to determine whether or not this individual is committing a crime? The evidence in this case that we know of in the record prior to the arrest never indicates what any allegation of committing a crime was. There were lots of hunches. They would go and they would look. They would say, discount it, say it didn't count. And they did that multiple times for multiple things. And the state, McCullough says you can't do that. You cannot use that. And that's the real key. We've got your argument. Thank you. Thank you, Your Honor. Then moving on. Your time is up. It goes up. Oh, I'm sorry. I didn't see that the red light was on. I apologize. You're having a busy morning. It is, yes. Good morning once again. I'm Carl Schock representing the United States. The defendant's argument here fails for the threshold reason that CPO Anderson's access to GPS information that he concedes was lawfully collected was not a search and therefore doesn't implicate the Fourth Amendment at all. Law enforcement doesn't conduct a search every time that it accesses previously collected information. And that includes information that's stored in a government database. Nor is it a search for a parole officer to share lawfully collected information with law enforcement or for one law enforcement agency to share information with another. And then more generally, as a community inmate who is aware that the government was collecting his location information on an ongoing basis, the defendant had no legitimate expectation of privacy in that information. And then alternatively, although I don't think the court needs to get to this point, even if there was a search, that search was reasonable under the totality of circumstances exception. The court relied on item three of your list, right? I know that essentially there was no reasonable expectation of privacy that he had. Oh, the district court. Yes. Well, yeah, the district court seemed to treat CPO Anderson's access of the data as a search, which is not our view on appeal. I understand that. But I mean, why don't you start by defending, if you think it's defensible, the district court's rationale and then give us the other stuff. Yeah, so I can address that. So under the totality of the circumstances exception, and Pacheco recently talked about the totality of circumstances exception. And it says, it reminds us that a warrantless and suspicionless search is permissible. Here, his expectation was low, even lower than a parolee, I would submit. Whether it's all the way to incarcerated inmate, I don't think we need to get to that point. But not only was he an inmate, but he was subject to an unrestricted search condition. The order also said that he was subject to electronic surveillance. He knew that he was being monitored. So at most, he had a very, very minimal expectation. Well, the unrestricted search condition, did that pertain to this GPS data, or is that the usual general condition of search of person possessions in home? So there's both. There's a search provision that says he's subject to any search. There's a separate provision that says that he's subject to electronic surveillance. And then the regulations, the CDOC regulations, say that the electronic surveillance can include GPS monitoring. And so all of that makes his expectation about as low as they get. I would submit no expectations, such that there's not a search, but at a minimum, very low. And on the other hand, you have not only the general statements that this court and the Supreme Court have made about the heightened need for law enforcement with respect to parolees and, by extension, community inmates, but this defendant had been identified as a suspect in a string of robberies. And so the government interest was heightened and outweighed any minimal expectation of privacy that he might have had. Let me ask you this. He originally had an ankle bracelet that just said whether he was home or not. That's the information that it recorded. And then he was switched after, I guess, the drive-by shooting to one that had a more constant stream of more specific information. Did he have to go back down to BI Inc. and change out ankle bracelets? Or did somebody just change the software without him being aware that there was a change in the type of information collected? Sorry, that's a long question. No, that's okay. No, he had to go back and get a new monitor reinstalled. And that's reflected in, I think, CPO Beach's affidavit. One of those two affidavits, but I believe it's Beach's affidavit. So he had to go in, and she told him, and that's also in the affidavit, she said, now we're doing GPS monitoring. So there's no question that he knew that he was subject to GPS monitoring. I just want to, because the defendant places so much emphasis on McAuliffe and because the court addressed it, the district court addressed it, I do just want to reference it. I think, Judge McHugh, you were correct that it was not applying state law, at least with respect to the point that applies here. It was applying federal law. And more specifically, it was applying the special needs exception from Griffin, which perhaps does have a parole purposes requirement, as Pacheco seemed to suggest recently this last year. But then Knights and the Supreme Court came along and said, but there's a second exception. The totality of the circumstance exception. And under that exception, the purpose of the search is irrelevant. And then this court came along in Tucker one year later and actually went further and said, even if, said expressly what I think was implicit in Knights, but said expressly that even if it's done as a subterfuge for a law enforcement investigation, it's still reasonable. And adding one more piece onto that. And cites to Knights. And cites to Knights. And then adding one more piece onto that. In Tucker, Utah law at the time actually did say it had to be for a parole purposes requirement. So even if McAuliffe did for the defendant what he wants it to do, that would just make it exactly like what Utah law was in Knight where there was that parole purposes condition under state law. And the court said, while that might matter for the special needs exception, it doesn't matter for the totality of the circumstance exception. And the court held that even in light of that parole purposes requirement, a search for law enforcement was proper. So I think that the totality of the circumstances exception is the one that we would look to if it is a search. I do just want to go back, and I know this wasn't the basis for the district court's analysis, but I do think that it really is a fundamental point here, that law enforcement doesn't need a warrant every time that it looks at evidence that it's already collected. And that's because, as the Johnson versus Quandar case is the most extensive analysis on this, that's the DNA case that I cited from the D.C. Circuit. That's because there is no additional intrusion on privacy when the government looks at information that it already has. And so law enforcement may access that DNA database. It may also access fingerprint database. And that's because, as long as the initial search was proper, nothing additional, at least relevant to the Fourth Amendment, is happening when the government looks at that information. And then even if we were to look at the point that the information was then shared outside of that agency, to the extent that that matters, Pacheco says, or it notes and suggests, that a parole officer can share information with law enforcement, even if law enforcement could not independently obtain that information. And that makes sense. It doesn't make sense, for Fourth Amendment purposes, that law enforcement would need to get a warrant to go get information from a parole officer. It's always been the case that parole officers can share that information with law enforcement. The defense cites Carpenter versus United States, the recent cell tower data case from the Supreme Court. Is that relevant to our analysis here? I don't think it's relevant, and I think it's easily distinguishable on three bases here. First of all, the fact that this defendant is an inmate versus an ordinary citizen, and I think his expectation is less because of that. Second, because this is a government database we're talking about, not the government going to get information from a private database, like happened in Carpenter. And then third, because this defendant was expressly aware, under the terms of his order, that the information was being collected, and the government would have access to that information. Distinct from Carpenter, where there was no express acknowledgment by the defendant that that was happening. Unless, does the court have any other, unless the court has, go ahead. The evidentiary hearing, did the court abuse its discretion in not holding an evidentiary hearing? Yeah, so I was about to turn to that. Okay. I think you hit on the first point, which is that the defendant didn't raise any contested issues,  just for purposes of the argument here. And there still have not been any facts that would matter to this situation. The only critical facts here are that the defendant was aware that his information was being collected, and that information was in possession of the government. And so there simply was no search, and so anything about his expectations are irrelevant. But even if his expectations did matter, this court's case law is very clear that the question of what expectation of privacy a defendant has is a question of law. In addition, I also just want to make the point that the government here isn't relying on any consent basis for its argument. And so while I think that perhaps we could have, we're not making that argument here. So all the more reason that it doesn't matter whether it was an agreement or an order, or the nature of the order really doesn't play in at all. So I don't think that the court abused its discretion because there simply are no facts that would make any difference to the issues before the court. If the court has no further questions, the government would request that the judgment of the district court be affirmed. Thank you. Thank you both for your arguments.